**Andre CHALONEC, Appellant,**

v.

**MATHIASEN'S TANKER INDUSTRIES, INC.**

**No. 13352.**

United States Court of Appeals
Third Circuit.

Argued Dec. 13, 1960.

Decided March 29, 1961.

John Dorfman, Philadelphia, Pa., for appellant.

James F. Young, Philadelphia, Pa. (Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., on the brief), for appellee.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

The plaintiff, having suffered judgment against him below on a jury's verdict and his motion for a new trial having been denied,[1] has brought this appeal raising the issue as to whether the trial judge committed prejudicial error in his charge to the jury.

The facts may be summarized as follows:

The plaintiff, Andre Chalonec, a merchant seaman, in an action under the Jones Act, 46 U.S.C.A. § 688, and the general maritime law, sought recovery for a back injury sustained while working with a 36-inch pipe wrench aboard one of the defendant's vessels on November 13, 1956. Plaintiff testified that he injured his back when the head of the pipe wrench suddenly "gave way": he reported his injury the following day to the vessel's purser as a "wrenched" back and to its master as a "strained" back; he was furnished liniment by the purser and told by him to go ashore for x-rays at the first opportunity; on November 16, 1956, following his certification as fit for duty by defendant's doctor who customarily examined the vessel's crew before articles were signed for the next voyage, plaintiff was sent ashore to the United States Public Health Service at Charleston, South Carolina, where his back condition was diagnosed as a "lumbar strain", further treatment recommended and he was declared not fit for duty; plaintiff returned to his ship and was told by the master that in view of the unfitness certification he could not remain.

On November 20, 1956, plaintiff reported to the Public Health Service Hospital at Staten Island, New York, where a diagnosis was made of "lumbo-sacral strain"; plaintiff thereafter was treated at intervals at the Staten Island hospital during the course of the next two months for his back trouble and a kidney ailment; among the diagnoses made by various physicians at the hospital were "lumbo-sacral strain", "arthritis of lumbar spine due to old trauma" with respect to plaintiff's back and "chronic cystitis" and "contusion of right kidney" with respect to his kidney condition. No claim was made by plaintiff at the trial with respect to his kidney condition.

---

1. There was no opinion.

Plaintiff was hospitalized for a cystitis condition between April 16, 1957 and May 9, 1957, not related to his back injury. Diagnosis was made however of "osteoarthritis, spine, old" during this period.

Dr. Jacob Krause, plaintiff's witness, who had examined him on May 9, 1959, some two and one-half years following his alleged injury, testified that plaintiff had suffered a "chewing-gum" tear of a low back muscle which resulted in the muscle shredding and caused scar-like tissue to form which was disabling and painful.

Dr. Irvin Balensweig, defendant's witness, who had examined plaintiff on February 28, 1957, some three months after his alleged injury, testified that he found, at the time, that plaintiff had "tenderness" in his lower back which could have been due to trauma but that he was "fit for duty orthopedically" at the time. Dr. Balensweig said that while he "didn't specifically look for scar tissue" he "didn't see anything that resembled scar tissue" at the time of this examination.

Both Dr. Krause and Dr. Balensweig examined plaintiff in October, 1959, during the course of a prior trial.[2] They made the same finding with respect to plaintiff's back condition as had been made during their prior examinations, namely, Dr. Krause found scar-like tissue, Dr. Balensweig found none. Both agreed that plaintiff had an osteoarthritic condition within his lumbo-sacral area which antedated the alleged accident.

Dr. William Gash, an impartial medical witness, appointed by the District Court to examine plaintiff for the purpose of determining whether scar-like tissue existed, testified that he examined him on January 15, 1960, and found no scar tissue. He further testified that he "did not find any orthopedic evidence to substantiate a claim for this man's pain."

The trial judge gave this instruction to the jury in his charge:

"So that the only real physical complaint for which the plaintiff brings claim relates to alleged scar tissue or similar mass within the muscle of plaintiff's lower right back; consequently, if you find by the preponderance of the medical evidence offered in this case, that such scar tissue or similar mass does not exist or that it was not caused by the occurrence of November 13, 1956, then you must find in favor of the defendant." [3]

The crux of the plaintiff's contention on this appeal is that the foregoing instruction constituted prejudicial error since it made his right of recovery, assuming a jury finding of negligence or unseaworthiness, depend solely on the issue as to whether scar tissue had or had not formed and ignored the fact that a finding of a back injury, sans scar tissue, could have provided the basis for a verdict in his favor. On this score plaintiff points to the fact that his own testimony that he had suffered a back injury was corroborated by the testimony of Dr. Krause and the records of the Public Health Service hospitals at Charleston and Staten Island.

Defendant urges that "even if it can be said that the Court's charge with respect to the particular language complained of was too narrow in its construction, that conclusion would not hold true when the charge as a whole is taken into consideration"; that Special Interrogatory No. 1 submitted to the jury the issue as to whether any injuries were suffered by plaintiff, and, in any event, "there was proof of only one 'real physical complaint' "—the scar tissue.

Special Interrogatory No. 1, cited by defendant as placing before the jury the issue as to whether any injury was suffered by plaintiff, (as stated by the trial judge) follows:

---

2. This trial resulted in the withdrawal of a juror.

3. The defendant's seventh point for charge contained substantially the same language.

"Did the plaintiff sustain injuries which were proximately caused either in whole or in part by:

"First, any failure of the defendant to provide plaintiff with a safe and seaworthy vessel and safe appurtenances, equipment or appliances, and to keep them in a safe and seaworthy condition?

"The second part is:

"Did the plaintiff sustain injuries which were proximately caused by any negligence on the part of any of the officers, agents or employees of the defendant?"

It will immediately be noted that this Interrogatory is something less than a model since a negative answer to it would not disclose whether such answer was based on a finding that no injuries were sustained by plaintiff or on a finding that there was neither unseaworthiness nor negligence.

It is thus impossible for us to ascertain from the "No" answer to this Interrogatory by the jury whether its verdict for defendant was based on a finding of the absence of negligence or unseaworthiness or a finding of no injuries.

If the "No" answer to this Interrogatory was based on a finding of no injuries, and on this score we note that we find nothing in defendant's brief or argument relating to liability by reason of negligence or unseaworthiness, then the issue as to the challenged instruction emerges as critical.

In our view the challenged instruction was erroneous and prejudicially so since it took from the jury the overriding issue as to whether plaintiff suffered *any* injury and, in the plainest of terms, made his right to recovery depend solely on the existence of scar tissue. The instruction was that "if you find * * * that such scar tissue or similar mass does not exist * * * then you must find in favor of the defendant", and that meant that even if the jury found that plaintiff had suffered an injury to his back he was not entitled to recovery unless the injury had resulted in the formation of scar tissue.

Plaintiff in this case was required only to establish by a preponderance of the evidence that the vessel was unseaworthy or negligent and that he had been injured as a result—the extent of his recovery of damages would, of course, relate to the extent of his injuries and only on the score of the latter did the issue of the existence or nonexistence of scar tissue here relate.

By analogy, one would be entitled to a verdict for damages for a broken leg even though he failed to establish his further claim that calcium deposits had formed which added to his pain and disability.

Defendant's reliance on Interrogatory No. 1 as curing the challenged instruction, apart from the criticism earlier made, is futile.

Assuming even that the trial judge had in the course of his charge given a specific instruction that the jury must take into consideration all of the testimony as to plaintiff's injuries, the instruction complained of, would, at the minimum, have made for such uncertainty in the minds of the jury that its impact would have to be said to be so confusing as to require reversal.

For the reasons stated the judgment entered on the jury's verdict will be reversed and a new trial directed and the cause remanded with instructions to proceed in accordance with this opinion.